**COALFIELD TELEPHONE COMPANY, Appellant,**

v.

Michael F. THOMPSON, Deceased; Shirley M. (Ann) Thompson, Administratrix; Hon. Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2002–SC–0772–WC.

Supreme Court of Kentucky.

Aug. 21, 2003.

John T. Chafin, Kazee, Kinner & Chafin, Prestonsburg, Counsel for Appellant.

Robert J. Greene, Kelsey E. Friend Law Firm, Pikeville, Counsel for Appellees, Michael F. Thompson, Deceased, and Shirley M. Ann Thompson, Administratrix.

## OPINION OF THE COURT

█ As pertinent to this appeal, KRS 342.265(1) provides:

If the employee and the employer ... reach an agreement conforming to the provisions of this chapter in regard to compensation, a memorandum of the agreement signed by the parties or their representatives shall be filed with the commissioner, and, if approved by ... an administrative law judge, shall be enforceable pursuant to KRS 342.305.

The question presented by this workers' compensation appeal is whether correspondence between attorneys for the defendant-employer and the claimant (now deceased) constituted a sufficient memorandum of an agreement for the purposes of KRS 342.265(1). Affirming a decision by the Workers' Compensation Board, the Court of Appeals has determined that the letters clearly indicated an offer and acceptance and, therefore, remanded the claim to the Administrative Law Judge (ALJ) to consider the agreement. We affirm.

The claimant was born in 1973 and worked as a telephone lineman. On August 20, 1999, he was involved in a work-related accident and sustained injuries to his back, pelvis, torso, and bladder as well as a psychiatric overlay. Thus, he filed a workers' compensation claim. The parties proceeded to take proof, and a benefit review conference was held on September 13, 2000, at which time the parties signed a prehearing order and memorandum that set forth the stipulated and contested matters and summarized the proof.

On September 14, 2000, the employer, through counsel, mailed a letter to the claimant's attorney that stated, in pertinent part, as follows:

Enclosed for your review please find a copy of Mr. Thompson's earnings from 10/1/98 through 8/25/99. Also, enclosed is my calculation sheet which indicates that his highest quarter average weekly wage was $311.71. Using the impairment ratings from the Plaintiff's physicians, i.e., Templin and Weitzel, in conjunction with 342.730(b) and (c)(1), it would be $180.00 per week. Since your calculations would have been $197.00 a week and you offered a compromise of $160.00 a week, a $37.00, reduction, then it would follow that you would probably agree to a reduction to $143.00 per week. Our calculation on a lump sum discount of six percent (6%) or 391.1551 weeks would be $55,935.00. We are prepared to offer a lump sum in this amount to conclude this matter.

Please advise if we can resolve this at this figure. If your client is interested in a complete buyout, please provide a calculation in that regard.

Please advise at your earliest convenience as to your client's position. We will wait until next week to do a filing on the wage information.

On September 15, 2000, the claimant's attorney responded, as follows:

I have just talked with my client and he has advised me to accept your offer to settle this case for the lump sum of $55,935.00. This would be a settlement of income benefits only and would not be a complete buyout.

I assume you will prepare the settlement agreement. If you can get it done this coming week and sign it and forward it on to me, I can probably get Judge Smith to sign it when he is having hearing[s] here on the week of September 25th.

On September 18, 2000, the claimant died. Subsequently, his mother moved to be made a party to the claim in her capacity as the administratrix of his estate. Her brief to the ALJ maintained that, although not on an official form, the letters of counsel for the parties were written evidence of the offer and acceptance and constituted a signed memorandum of their agreement that should be enforced. In the alternative, she maintained that the claimant's estate was entitled to temporary and permanent income benefits from the date of the accident until his death.

Although recognizing that the parties exchanged "letters of settlement," the ALJ concluded that KRS 342.265 required an agreement to be signed by the parties or their representatives and approved by an ALJ in order to be enforceable. Noting that there was no dispute over the assertion that the claimant's estate was entitled to whatever benefits accrued up until the date of his death, the ALJ awarded a period of temporary total disability (TTD) benefits followed by a permanent, partial disability award that terminated on the date of death. Asserting that the ALJ erred by failing to approve the terms of the agreement that was documented in the exchange of letters by counsel, the executrix appealed and prevailed at the Board and the Court of Appeals.

Appealing, the employer points out that KRS 342.265(1) requires a memorandum of agreement, signed by the parties or their representatives, filed with the commissioner, and approved by the ALJ. Its position is that correspondence by counsel is insufficient to constitute a memorandum. Furthermore, until a proper memorandum was signed by the claimant or his representative, he was free to change his mind about the proposed terms, and the employer was without recourse to enforce the correspondence.

■ Although the correspondence that is at issue may reflect an agreement of the parties, it is not the sort of agreement that may be enforced in circuit court under KRS 342.305 because the ALJ refused to consider its terms and, therefore, failed to approve it. There is no argument that the intervening death of the claimant affected the viability of any agreement the parties may have reached. What is at issue is whether the correspondence of counsel constituted a sufficient memorandum of an agreement of the parties or whether, as the employer maintains, KRS 342.265(1) requires a formal document that contains the terms of an agreement and that is signed by the parties or their representatives.

Although *Skaggs v. Wood Mosaic Corp.*, Ky., 428 S.W.2d 617 (1968), turned on the requirements of KRS 342.265, it concerned whether a claim that was filed approximately five years after the date of accident was barred by limitations. The worker asserted that after paying voluntary medical and TTD benefits, the employer offered to settle the potential claim and accompanied its offer with a check, which he cashed. He argued that their actions constituted an offer and acceptance but that the agreement was neither filed with nor approved by the "old" Board. He maintained, therefore, that under the applicable

version of KRS 342.265, the period of limitations was suspended, and his claim was timely.[1] Recognizing that the purpose of the statute was to coerce employers to file and obtain approval of settlement agreements to ensure that they were fair, that ordinarily the word "agreement" referred to a mutual understanding, and that to interpret it narrowly would frustrate the purpose of the statute, the Court determined that the parties had reached an agreement within the meaning of the statute. *Id.* at 619. Furthermore, the Court emphasized that an agreement, itself, did not have to be in writing if there was "written evidence (such as the letter and canceled checks in this case) for the 'memorandum' which the statute says shall be filed." *Id.*

In determining whether the correspondence of counsel constituted a memorandum of an agreement by the claimant and his employer, the ALJ was not faced with a situation such as in *Carter v. Taylor,* Ky.App., 790 S.W.2d 448 (1990), where the only written evidence of an alleged agreement consisted of one attorney's notes. Here, letters from representatives of both parties clearly indicated the terms to which they agreed, and there is no assertion that the terms were incomplete. Under those circumstances, the Board and the Court of Appeals correctly determined that the ALJ should have addressed the substance of the agreement rather than its form.

The decision of the Court of Appeals is affirmed.

All concur.

---

1. A 1960 amendment suspended the period of limitations until an agreement was filed and approved. That part of the provision was deleted effective December 12, 1996.